IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| JAMES A. HEARD, M20133, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 25-cv-1560-DWD |
| | ) | |
| WEXFORD HEALTH SOURCES, INC., | ) | |
| JOHN DOE DOCTOR, | ) | |
| JOHN BARWICK, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff James Heard, an inmate of the Illinois Department of Corrections (IDOC) currently detained at Pinckneyville Correctional Center (Pinckneyville), brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights.  (Doc. 1).  Plaintiff alleges that the defendants have violated his rights by failing to provide treatment for a strangulated hernia despite deeming his grievances about the emergencies.   Plaintiff's Complaint (Doc. 1) is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A.   Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims.  *See* 28 U.S.C. § 1915A(a)-(b).  Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed.  28 U.S.C. § 1915A(b).  At this juncture,

the factual allegations of the *pro se* complaint are to be liberally construed.  *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## The Complaint

Plaintiff alleges that he is currently suffering from a strangulated hernia about the size of a golf ball, which was formally diagnosed as an inguinal hernia in May of 2025. He claims that he filed a first emergency grievance about the issue on May 19, 2025, which was deemed an emergency by Defendant Barwick on May 29, 2025. (Doc. 1 at 6).  Despite the grievance being deemed an emergency, he has not received a response.  He claims that his hernia has become strangulated, he can no longer push it back into place, and he is concerned that the tissue will die, or he could have a serious complication.  He claims he is no longer able to participate in daily activities, and he is concerned that any wrong move could cause serious damage.   On June 17, 2025, he filed a second emergency grievance to inquire about the first, and it was also deemed an emergency on June 30, 2025.  (Doc. 1 at 8).  Despite these efforts, as of August 5, 2025, he still had not received any response.

Plaintiff claims that he has also filed 10-20 emergency sick call slips to no avail. Other than being seen by a doctor in May to initially diagnose the hernia, he states he has not been seen by a doctor, and he has not received medical care.  As relief, Plaintiff seeks preliminary injunctive relief in the form of emergency surgery.  (Doc. 1 at 9).

Based on the allegations in the Complaint, the Court will designate the following claims:

Claim 1:    Eighth Amendment deliberate indifference claim against
            Defendant John Doe for failing to follow-up concerning
            Plaintiff's hernia;

Claim 2:    Eighth Amendment deliberate indifference claim against
            Defendant Barwick for deeming grievances emergencies
            but failing to ensure timely processing.

The parties and the Court will use these designations in all future pleadings and orders
unless otherwise directed by a judicial officer of this Court. Any claim that is mentioned
in the Complaint but not addressed in this Order is considered dismissed without
prejudice as inadequately pled under *Twombly. See Bell Atl. Corp. v. Twombly*, 550 U.S.
544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does
not plead "enough facts to state a claim that is plausible on its face").

<u>**Preliminary Dismissal**</u>

Plaintiff named Wexford Health Source in the caption of this case, but he did not
provide any factual allegations about Wexford. Wexford is a private corporation that
cannot be held liable under § 1983 unless the constitutional violation was caused by an
unconstitutional policy or custom of the corporation itself. *Shields v. Illinois Dept. of
Corrections*, 746 F.3d 782, 789 (7th Cir. 2014); *see also Monell v. Department of Social Services
of City of New York*, 436 U.S. 658 (1978). Thus, under *Monell*, for Plaintiff to recover from
Wexford, he must show that the alleged constitutional violation was caused by: (1) an
express policy that caused a constitutional deprivation when enforced; (2) a widespread
practice that was so permanent and well-settled that it constituted a custom or practice;
or (3) a person with final policymaking authority. *Dean v. Wexford Health Sources, Inc.*, 18
F.4th 214, 235 (7th Cir. 2021). In other words, a plaintiff must show that "systematic and

gross deficiencies in …[IDOC's] medical care system," caused his injury, and also that "a policymaker or official knew about these deficiencies and failed to correct them." *Daniel v. Cook Cty.*, 833 F.3d 728, 735 (7th Cir. 2016). Alternatively, a plaintiff must show that "the unlawful practice was so pervasive that acquiescence on the part of policymakers was apparent and amounted to a policy decision." *Dixon v. Cty. Of Cook*, 819 F.3d 343, 348 (7th Cir. 2016). Without any allegations pertaining to Wexford, Plaintiff has failed to state a claim against the entity, and Wexford will be dismissed without prejudice.

## Analysis

### Claim 1

An Eighth Amendment claim arising from the denial of medical care consists of an objective and a subjective component. *Berry v. Peterman*, 604 F.3d 435, 439–40 (7th Cir. 2010). A plaintiff must show that he suffered from a serious medical condition (i.e., an objective standard) and also show that each defendant responded with deliberate indifference (i.e., a subjective standard). *Id.* To satisfy the subjective component, a prisoner must demonstrate that an official knew of and disregarded an excessive risk to inmate health. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Neither medical malpractice, nor mere disagreement with a doctor's medical judgment will amount to deliberate indifference. *Id.* Additionally, an inmate is not entitled to demand specific care, and a medical professional may choose from a range of acceptable courses of care. *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019).

Plaintiff's allegations against Defendant John Doe are a bit vague, but the Court understands him to fault John Doe for diagnosing his inguinal hernia in May of 2025, and

then failing to take any follow-up action now that the hernia has become strangulated. Ultimately, more information will be needed to establish the appropriateness of this claim, such as what John Doe knew about the hernia when he diagnosed it in May, and if he received any personal notice that the condition has worsened in the last three months.  For now, the Court will accept the claim as plausible.

<u>**Claim 2**</u>

Plaintiff faults Defendant Barwick for deeming his grievances emergencies, but then not ensuring that responsive action was rendered.  For non-medical prison officials, such as administrators, an inmate may establish a claim of deliberate indifference if he can demonstrate that an official recklessly turned a blind eye to his serious medical need, or otherwise failed to exercise their authority to investigate and remedy the situation.  *See e.g.*, *Perez v. Fenoglio*, 792 F.3d 768, 781-82 (7th Cir. 2015).  However, if an administrator does investigate and is informed by medical professionals that care is ongoing, then they may reasonably rely on the judgment of medical professionals.  *See e.g.*, *Hayes v. Snyder*, 546 F.3d 516, 527-28 (7th Cir. 2008) (administrators who promptly responded to an inmate's correspondence about deficient care, investigated, and then relied on the judgment of treating providers, were not deliberately indifferent).  For now, Plaintiff's allegations are sufficient to proceed against Barwick, whom he alleges deemed his grievances an emergency, but then did not ensure any resolution.  Specifically, he claims Barwick deemed his May grievance reporting the strangulation to be an emergency, and then at the end of June he deemed a second grievance seeking a status update on the first as an emergency.  This series of events suggest Barwick knew that an emergency medical

condition may exist, and that it was not being addressed in a timely fashion. As Warden, Barwick is also the appropriate party to implement any potential injunctive relief.

### Request for Immediate Injunctive Relief

Plaintiff did not file a freestanding motion for a preliminary injunction, but in his demand for relief and in the body of the complaint (Doc. 1 at 8-9) he clearly and unequivocally asks the Court for immediate injunctive assistance, and indicates he is experiencing ongoing medical complications. Specifically, he asks that he be approved for emergency surgery on his strangulated hernia. While inmates cannot demand specific care from the prison healthcare system, Plaintiff appears to be receiving no care whatsoever. To seek a preliminary injunction, a plaintiff must establish: a likelihood of success on the merits of his claim; no adequate remedy at law; and, irreparable harm without the injunctive relief. *See* *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020). As for the first requirement, the Court must determine whether "plaintiff has any likelihood of success—in other words, a greater than negligible chance of winning." *AM General Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 804 (7th Cir. 2002). "A movant's likelihood of success on the merits must be strong." *Tully v. Okeson*, 977 F.3d 608, 613 (7th Cir. 2020). A strong showing typically entails a demonstration of how the applicant intends to prove key elements of his case. *Ill. Republican Party v. Pritzker*, 973 F.3d 760, 762-63 (7th Cir. 2020); *Doe v. University of Southern Indiana*, 43 F.4th 784, 791-92 (7th Cir. 2022) (the court is not required to make inferences in the movant's favor for preliminary injunctive relief).

The Court must also decide whether an adequate remedy at law exists and whether the plaintiff will suffer irreparable harm without injunctive relief. Irreparable

harm is harm which cannot be repaired. *Graham v. Med. Mut. Of Ohio*, 130 F.3d 293, 296 (7th Cir. 1998) ("Irreparable harm is harm which cannot be repaired, retrieved, put down again, atoned for. The injury must be of a particular nature, so that compensation in money cannot atone for it."). The Court must then weigh "the balance of harm to the parties if the injunction is granted or denied and also evaluate the effect of an injunction on the public interest." *Id.*; *Korte v. Sebelius*, 735 F.3d 654, 665 (7th Cir. 2013). "This equitable balancing proceeds on a sliding-scale analysis; the greater the likelihood of success of the merits, the less heavily the balance of harms must tip in the moving party's favor." *Korte*, 735 F.3d at 665.

An injunction that seeks an affirmative act by the respondent is a mandatory preliminary injunction and should be sparingly issued. *Mays*, 974 F.3d at 818. If injunctive relief is warranted, the Prison Litigation Reform Act provides that the injunction must be "narrowly drawn, extend no further than necessary to correct the harm . . . ," and "be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2). Injunctive relief must be related to issues in the underlying lawsuit. *See e.g.*, *Tatum v. Hunter,* Case No. 22-2411 (S.D. Ill. 2023) (Doc. 16) (denying injunctive relief, where the injunctive relief sought was not narrowly tailored and did not align with the claims in the case) *aff'd in Tatum v. Hunter*, Case No. 23-2253 (7th Cir. May 16, 2024); *Daniels v. Dumsdorff, et al.*, Case No. 19-cv-394 (S.D. Ill. 2019).

Here, Plaintiff's complaint presents a clear and immediate concern about his medical situation. He has submitted numerous requests for emergency treatment but claims he has been entirely unable to secure care. As such, the Court finds it appropriate

to direct the Defendants to respond to Plaintiff's Motion in short order. **The Defendants shall include in their response, a medical assessment of Plaintiff's current medical condition by a treating professional at Pinckneyville.**

### Disposition

**IT IS HEREBY ORDERED THAT Claim 1** of the Complaint (Doc. 1) survives against Defendant John Doe (the doctor who saw Plaintiff in May), and **Claim 2** may proceed against Defendant John Barwick. By contrast, Plaintiff has failed to state a sufficient claim against Defendant Wexford Health Source and the Clerk of Court is **DIRECTED** to **TERMINATE** Defendant Wexford Health Source.

Plaintiff is **DIRECTED to file a notice within 21 days** giving the Court as much descriptive information (nicknames, hair color, height, etc.) as possible about John Doe Doctor (the doctor who saw him and diagnosed his hernia in May 2025) so that the Warden can assist in identifying this person by name. Once Plaintiff submits his notice, the Court will set a deadline for Barwick to respond with identifying information.

The Clerk of Court is **DIRECTED** to prepare for Defendant John Barwick: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 1), and this Memorandum and Order to Defendants' place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the

Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merits Review Order.

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed in forma pauperis was granted. See 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that he is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 14 days after a change of address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for failure to prosecute. FED. R. CIV. P. 41(b).

The Clerk of Court is **DIRECTED** to enter the standard HIPAA Order in this case because it will involve the exchange of medical records.

A ruling on Plaintiff's request for injunctive relief (Doc. 1 at 9) shall be **DEFERRED**, and Defendant Barwick must respond to the allegations concerning injunctive relief within 14 days of entering an appearance. Barwick's response must include a medical assessment of Plaintiff's current condition. The Clerk of Court is **DIRECTED** to place a freestanding "Motion for a Preliminary Injunction" on the docket sheet to reflect the demand in the complaint (Doc. 1 at 8-9).

**IT IS SO ORDERED.**

Dated:  August 14, 2025                    /s *David W. Dugan*

                                                            _____
                                                            DAVID W. DUGAN
                                                            United States District Judge

## NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take 90 days or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.

The Court wishes to remind the Plaintiff that litigation is often viewed a series of hurdles that the Plaintiff must clear to get to another hurdle. Initial screening is such a hurdle, but it is a very low one for the Plaintiff to clear.  As noted above, surviving initial screening only requires the bare statement of a claim that, if proven, could entitle Plaintiff to some relief. At trial, he will need to prove by a preponderance of evidence that the facts alleged actually occurred and that those facts satisfy the legal requirements for recovery. Trial is the highest and most difficult of hurdles for any Plaintiff to clear.